Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3893 | **DATE** | 9/18/2000 |
| **CASE TITLE** | SANDRA GADDY, et al. vs. GALARZA MOTOR SPORT L.T.D., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The motion to dismiss [14-1] is granted as to Counts III and IV and denied as to Counts V, VII, VIII and X. CAC shall answer Counts V, VII, VIII and X by September 29, 2000. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 2 0 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 00 SEP 19 PM 6: 03 | 9/18/2000 date mailed notice | |
| SB | courtroom deputy's initials | | jad mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA GADDY and ESTHER BRADLEY, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 00 C 3893 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| GALARZA MOTOR SPORT L.T.D., an Illinois corporation, and CREDIT ACCEPTANCE CORPORATION, a Michigan corporation, | ) ) ) ) | |
| Defendants. | ) | |

**DOCKETED**
SEP 2 0 2000

## **MEMORANDUM OPINION AND ORDER**

Sandra Gaddy and Esther Bradley (collectively "plaintiffs") sue Galarza Motor Sport L.T.D. ("Galarza") and Credit Acceptance Corporation ("CAC") for damages and other relief for alleged violations of the Truth In Lending Act ("TILA") (Count I), the Magnuson-Moss Warranty Act ("Magnuson-Moss") (Counts II and III), the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act") (Counts IV, V, VII, VIII and X), the Credit Services Organization Act (Count VI), the Federal Trade Commission ("FTC") Notice contained in the retail installment contract (Count IV), and common law fraud (Count IX). CAC moves to dismiss Counts III, IV, V VII, VIII, and X.

## **BACKGROUND**

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in plaintiff's favor. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1429 (7th Cir. 1996). The following statement of facts is taken from the amended complaint. Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996).

**The Parties**

Gaddy and Bradley are residents of Will County, Illinois. Galarza is an Illinois corporation, with its principle place of business in Will County, Illinois. It sells used automobiles. CAC is a Michigan corporation authorized to do business in Illinois. Its business includes the purchase of retail installment sales contracts.

**The Transaction**

On February 11, 2000, plaintiffs agreed to purchase a 1994 Dodge Shadow from Galarza. They also agreed on the price of the car and the service contract, which a Galarza employee stated would "cover everything." Plaintiffs paid $700 as a down payment for the car and financed the remainder of the purchase price. Galarza allegedly fraudulently inflated the down payment to $1,510 on the buyer's order for the car.

Galarza helped plaintiffs obtain financing. Galarza gave blank contract forms to plaintiffs to sign, saying that the forms must be signed in order to allow them to obtain financing and purchase the car that night. Plaintiffs signed the forms, which were completely blank. Plaintiffs were told that Galarza would obtain the financing the next day. When they called the next day, Dave, a Galarza employee, told them that the bank had not called.

On February 15, 2000, Galarza sent plaintiffs a set of completed purchase documents. The terms reflected in the documents were not the terms the parties had agreed to on February 11. The total price for the car was higher. The service contract now was $999, instead of $145. The insurance charge was $461.78, and included credit disability insurance which plaintiffs did not request. If plaintiffs had paid cash for the car, they would not have been charged for insurance. The interest rate was 22%. The service contract did not "cover everything," but only covered the engine.

The consumer credit contract signed by plaintiffs was assigned to CAC. The contract contains the FTC's Rule Concerning Preservation of Consumers' Claims and Defenses ("FTC Holder Rule"), 16 C.F.R. § 433.2 (1991), required by the FTC to be included in all retail installment contracts:

> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The second week that Gaddy owned the car, it became inoperable. She contacted Galarza immediately and requested repairs under the service contract. Galarza informed Gaddy that the car's problems were not covered by the service contract, and Gaddy must pay for the repairs.

On March 15, 2000, Gaddy revoked her acceptance of the car pursuant to Illinois Commercial Code, § 2-608. On June 2, CAC repossessed the car. Both plaintiffs received a notice of redemption, and only Gaddy received an affidavit of defense. CAC reported plaintiffs' debt to credit reporting agencies, failing to inform the agencies that plaintiffs' remaining debt to the company was disputed.

## DISCUSSION

### I  Standard of Review

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). Therefore, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of plaintiffs. Zimmerman v. Burch, 494 U.S. 113, 118 (1990). The court will dismiss a claim only if "it appears beyond doubt that [the plaintiff] can prove no set of facts in support of his claim which would entitle him to relief." Colfax Corp. v. Ill. State Highway Auth., 79 F.3d 631, 632 (7th Cir. 1996).

## II    Count III

CAC asserts that Count III fails to state a claim under Magnuson-Moss because that Act only provides a remedy for consumers damaged by a supplier, warrantor or service contract. 15 U.S.C. §2310(d)(1). However, Magnuson-Moss also provides that damage by these three classes "*or* under a written warranty, implied warranty or service contract" may result in liability. Id. (emphasis added). Plaintiffs allege damages under a written and implied warranty theory.

The definitions of written warranty, § 2301(6), and implied warranty, § 2301(7), provide that the warranty must be made "in connection with the sale" by a "supplier." CAC made no warranty in connection with a sale. Galarza made the sale to plaintiffs. CAC had no contact with them prior to the sale. In addition, CAC is not a "supplier" as that term is defined by the statute. As a result, CAC is not liable under Magnuson-Moss and Count III must be dismissed as to it. See Patton v. McHone, 1993 WL 82405 at *3 (Tenn.App. 1993) (credit company "cannot be held liable [under Magnuson-Moss] based upon [dealer's] implied warranty of merchantability and selling of a service contract); Lytle v. Roto Lincoln Mercury & Subaru, 167 Ill.App.3d 508, 516 (Ill.App. 1988) ("section 2301(6)(B) requires that [the written warranty] be a basis of the bargain between a supplier and a buyer").[1]

## III    Count IV

Count IV alleges that plaintiffs had a right under §2–608 of the Illinois Commercial Code to revoke their acceptance of the car because it was substantially impaired, and CAC refused to accept

---

[1] Plaintiffs' argue a credit company is derivatively liable under Magnuson-Moss, citing Felde v. Chrysler Credit Corp., 219 Ill. App. 3d 530, 540 (Ill. App. 1991). However, Felde holds only the seller and manufacturer liable under the Magnuson-Moss, not the creditor.

4

revocation. CAC contends it is not liable under § 2-608 because it does not have a buyer/seller relationship with plaintiffs, as defined in 810 ILCS 5/2-103. CAC is correct.

Only Galarza sold and tendered an allegedly impaired car. CAC cannot be liable under this theory because CAC was not a party to the sales contract between plaintiffs and Galarza. Accordingly, Count IV must be dismissed as to CAC.

**IV     Count V**

Count V predicates liability against CAC on the retail installment contract Galarza assigned to CAC and alleges that the FTC holder rule subjects CAC to all claims and defenses that plaintiffs could assert against Galarza. Plaintiffs seek compensatory damages, an order revoking acceptance of the car and future payments under the contract, and attorneys' fees. CAC moves to dismiss Count V on the same grounds as Count IV: it does not have a buyer/seller relationship with plaintiffs. CAC ignores plaintiff's reliance on the FTC holder rule as the basis for its theory of liability.

The FTC holder rule subjects an assignee of a consumer contract to all claims and defenses the debtor/consumer could assert against the seller. 16 C.F.R. 433.2. "The [holder rule] was designed to preserve consumers' claims and defenses and restore the right of nonpayment to consumers by eliminating the creditor's holder-in-due-course status." Mount v. LaSalle Bank Lake View, 926 F.Supp. 759, 763 (N.D.Ill. 1996) (citing Felde, 219 Ill.App.3d at 536. "[T]he FTC also intended to permit a consumer to maintain an action against the assignee-creditor for a refund of all money paid on account." Id. Dismissal of Count V is therefore unwarranted.

V       **Illinois Consumer Fraud Claims - Counts VII, VIII, and X**

CAC advances several reasons plaintiffs' claims under the Illinois Consumer Fraud Act should be dismissed. CAC contends plaintiffs fail to allege that CAC, rather than Galarza, engaged in any acts that violate the Illinois Consumer Fraud Act. This argument is without merit.

The characteristics of an unfair act or practice under the Illinois Consumer Fraud Act include otherwise lawful practices that offend public policy, or are immoral, unethical, oppressive or unscrupulous, and cause substantial injury to consumers. People ex. rel. Hartigan v. Knecht Services, Inc., 216 Ill.App.3d 843, 854 (Ill.App. 1991) (citing FTC standard for unfairness). "The majority of the traditional common law elements [of fraud] have been virtually eliminated by the Consumer Fraud Act]." Buechin v. Ogden Chrysler-Plymouth, Inc., 159 Ill.App.3d 237, 249 (Ill. App. 1987). Whether or not a party's conduct violates the Consumer Fraud Act is a question of fact. People ex. rel. Daley v. Datacom Systems Corp., 146 Ill.2d 1, 34-35 (Ill. 1991).

The complaint alleges several acts that may violate the Illinois Consumer Fraud Act: (1) CAC refused to accept plaintiffs' revocation of acceptance of the retail installment contract (Count VII); (2) CAC accepted assignment of the retail installment contract though it evidenced multiple violations of the Illinois Credit Services Organizations Act (Count VII); (3) CAC failed to disclose the buy-rate to plaintiffs (Count VII); (4) CAC sent plaintiffs defective notices of repossession (Count VIII); and (5) CAC inaccurately reported the plaintiffs' debt to credit agencies (Count X). CAC fails to establish that as a matter of law, it is not subject to liability under the Illinois Consumer Fraud Act.

CAC next argues that Illinois Consumer Fraud Act claims must comply with Fed. R. Civ. P. 9(b), which requires allegations of fraud to be plead with particularity. CAC cites Dileo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990), in support of its argument. Dileo is inapplicable because

Illinois Consumer Fraud Act prohibits not only fraud, but a broad array of unfair practices. Buechin, 159 Ill.App.3d at 249.

With respect to Count VII, CAC argues that it has no statutory or common law obligation to honor plaintiffs' revocation of the consumer credit contract. This argument also fails. Under the FTC holder rule, all claims and defenses against the seller may be asserted against the assignee. Therefore, statutory liability may exist against CAC if plaintiffs have a valid claim or defense against Galarza.

Whether CAC's alleged failure to comply with the Illinois Vehicle Code when it repossessed plaintiffs' car (Count VIII) constitutes a violation of the Illinois Consumer Fraud Act is a question of fact. Plaintiffs do not assert that a violation of the Vehicle Code is a *per se* violation of the Consumer Fraud Act, as CAC argues. Rather, they contend that failure to comply with the Vehicle Code falls within the broad range of unfair conduct prohibited by the Consumer Fraud Act. CAC fails to establish that as a matter of law, it cannot be subject to liability under Count VIII.

Whether CAC's reporting plaintiffs' debt to credit reporting agencies without indicating that the debt was disputed (Count X) constitutes a violation of the Illinois Consumer Fraud Act is also a question of fact. Plaintiffs do not have to allege a misrepresentation to state a claim under the Consumer Fraud Act, as CAC argues. Plaintiffs allege an unfair act that causes substantial injury to consumers. CAC has failed to establish as a matter of law that it cannot be subject to liability under Count X.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is granted in part and denied in part. Counts III and IV against CAC are dismissed with prejudice. The motion is denied as to Counts V, VII, VIII and X.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

September 18, 2000